IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHESTER C. GRIFFITHS | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-09-1657 |
| JOHNNY L. HUGHES | * | |
| Defendant | * | |
| | *** | |

## MEMORANDUM

Pending is defendant's motion to dismiss or for summary judgment. Paper No. 16. Plaintiff opposes the motion. Paper No. 19. Upon consideration of the papers filed, the court determines that an evidentiary hearing in this matter is unnecessary. *See* Local Rule 105.6 (D. Md. 2009).

## Background

Plaintiff claims that prior to his arrest he was seen by his doctor for complaints of a bad taste in his mouth and upset stomach. Paper No. 1 at p. 4. The doctor scheduled plaintiff for an endoscopy, but before he could have it done plaintiff was arrested. Plaintiff informed the United States Marshal Service ("USMS") that he had a "dire medical condition" which required an endoscopy or an equivalent test to be done. Plaintiff states he received no response to his requests for medical care. *Id*. at p. 5.

After two months of attempting to get medical attention, plaintiff filed a motion in this court with Magistrate Judge Paul W. Grimm. On September 20, 2006, Judge Grimm issued an order directing the Marshals Service to: cause plaintiff to promptly receive an evaluation by an appropriate health care provider; cause plaintiff to receive care and treatment consistent with the

standard of care for the illness or condition revealed by the evaluation; and make appropriate records and reports concerning any illness or condition and provide them to the court. Paper No. 1 at Ex. A.

Plaintiff claims Judge Grimm's order was ignored by the USMS and his medical needs were left unattended. As his health began deteriorating plaintiff and his defense counsel brought the matter to the attention of the undersigned in the context of his criminal case. He claims that even though it was acknowledged by all parties that no medical testing had taken place, he was transferred to the custody of the Bureau of Prisons ("BOP") without necessary medical examinations taking place. He claims that during the period from June 2006 to June 2007, his symptoms of stomach pains and bitterness in his mouth intensified into bouts of biliousness, constipation, dyspepsia, and nausea. He further claims he became very weak from lack of nutrition as the meals served to him at the local jail where he was incarcerated caused vomiting. Paper No. 1 at pp. 5—6.

Defendants assert that the USMS took custody of plaintiff on October 18, 2006. Paper No. 16 at Ex. 2. Plaintiff was charged in this court with possession with intent to distribute marijuana. *Id*. at Ex. 5. The order requiring plaintiff's medical care had been issued in September, prior to his transfer of custody to the USMS. *Id*. at Ex. 6.

On October 19, 2006, plaintiff received a physical exam from a medical doctor which noted that he had no current or past problems with a variety of issues including gastrointestinal history. *Id*. at Ex. 7. The exam notes indicate that plaintiff had been suffering from dyspepsia for eight months, but there had been no nausea, vomiting, blood in stool, or fever. *Id*.

On November 7, 2006, plaintiff was evaluated by a doctor at the University of Maryland

Medical Center Emergency Department after complaining of severe stomach pain. A CT scan performed on plaintiff did not show evidence of any obstructions of the intestine, infection of the appendix, or infection of the gallbladder. Paper No. 16 at Ex. 8. Plaintiff's discharge instructions indicated that his stomach condition, which did not seem serious at the time, had an unknown cause. Plaintiff was instructed to rest, eat a light diet, and to watch for warning signs such as blood in vomit or stool, or painful urination. *Id*. During his stay in the custody of the Marshals Service plaintiff was prescribed Metamucil, prilosec, omeprazole, docusate, and ranitidine for his symptoms. *Id*. at Ex. 5, p. 2; Ex. 2.

Plaintiff was transferred to the custody of the BOP on June 12, 2007. *Id* at Ex. 2. Plaintiff met with a physician's assistant and a doctor in June and July, 2007. *Id*. at Ex. 3. After receiving diagnostic testing in May 2008, it was recommended that plaintiff receive a laparascopic cholecystectomy (gall bladder removal), which he underwent in August 2008. *Id*. at Ex. 3, p. 3; Ex. 2, pp. 3—8.

**Prior Proceedings**

On January 13, 2009, plaintiff filed a civil rights claim pursuant to *Bivens v. Six Unknown Named Agents Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in the United States District Court for the Western District of Louisiana. Paper No. 16 at Ex. 3. The Louisiana case was filed against Dr. Salvador Villalon, Xiomara Schuman, and Warden Joe Young of the Federal Corrections Institution at Oakdale, Louisiana (FCIO). *Id*. Originally, plaintiff named Maryland's Marshal Johnny Hughes in the Louisiana case, but abandoned those claims when he failed to offer supporting information for the claims against Hughes in response to the Louisiana court's order. *Id*. at fn. 2. The crux of plaintiff's claim in the Louisiana case concerned his

3

medical treatment upon entering the BOP on June 15, 2007. Specifically, plaintiff claimed the diet provided at FCIO was exacerbating his stomach issues and that he was being denied proper medical care. He filed numerous sick call slips and claimed that diagnostic testing was not scheduled until approximately one year later. Plaintiff was seen by a specialist on May 22, 2008, who recommended removal of his gall bladder. The surgery was performed in August 2008. Plaintiff claimed in the Louisiana case that medical staff continued to deny him an appropriate diet as he was told he should not eat greasy, spicy food. He was allegedly told that there was no bland diet available at FCIO and that he may have to be transferred to a medical facility.

The Louisiana court found that plaintiff had failed to state a claim upon which relief may be granted because his disagreement with the medical care provided did not state a constitutional claim against the medical care defendants and the claims against the warden were based only on vicarious liability. Paper No. 16 at Ex. 3, pp. 6- 7.

### Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Defendant asserts that plaintiff's claims, filed as an action pursuant to 42 U.S.C. §1983, are subject to dismissal because defendant is a federal official and civil rights claims such as plaintiff's must be brought pursuant to *Bivens*, 403 U.S. 388 (1971). Paper No. 16 at p. 8. Notwithstanding plaintiff's inartful pleading, the complaint is construed as one filed pursuant to *Bivens*.

Defendant also asserts that the previous litigation in the United States District Court for the Western District of Louisiana bars consideration of the current claims. Paper No. 16 at pp. 16—18. "Under *res judicata*, a final judgment on the merits bars further claims by the parties or their privies based on the same cause of action." *Montana v. United States*, 440 U. S. 145, 153 (1979) (citation omitted). "The doctrine of collateral estoppel precludes relitigation of issues of

5

fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." *Weinberger v. Tucker*, 510 F. 3d 486, 491 (4th Cir. 2007) (citation omitted).

Plaintiff's claims in the earlier litigation concerned the care he was allegedly denied while in the custody of the BOP, beginning in June 2007. The instant claims against defendant Hughes concern his care while in the custody of the USMS from 2006 through June 2007. In the earlier case plaintiff appears to have abandoned his claims as to Hughes and focused instead on his treatement while in the BOP. This court concludes that the doctrine of *res judicata* does not apply to the instant case.

It is clear that plaintiff's claim against defendant Hughes is based on supervisory liability, known as respondeat superior. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir.2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir.2001) (no respondeat superior liability in a Bivens suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir.2001), *citing Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;

(2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). There are no allegations that Hughes himself either prevented plaintiff from receiving care ordered by a medical professional or authorized any misconduct that caused a lack of care.

Ordinarily, the court would examine the allegations raised in the complaint to determine if they state a claim as to other appropriate defendants had they been named. In the instant case the court is precluded from doing so, inasmuch as those claims were finally litigated in the Louisiana case.[1]  Accordingly, defendant Hughes is entitled to summary judgment in his favor and the complaint must be dismissed.

March 26, 2010                             /s/
Date                                     J. Frederick Motz
                                         United States District Judge

---

[1] In any event, plaintiff was provided with adequate medical care, including testing and outside evaluation at an area hospital, while in custody of the Maryland USMS.